## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| TALMESHIA JORDAN, individually and on behalf of all others similarly situated, | : **CLASS AND COLLECTIVE ACTION COMPLAINT** : : : **JURY TRIAL DEMANDED** |
| Plaintiff, | : : |
| v. | : Case No: : |
| GROUND EFFECTS LLC, a Delaware limited liability company, | : Hon. : : : |
| Defendant. | : |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff, Talmeshia Jordan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby brings this Class and Collective Action against Ground Effects LLC ("Defendant") to recover unpaid wages, liquidated damages, interest, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq*. and the common law claim of unjust enrichment. Plaintiff's allegations herein are based upon knowledge as to matters relating to herself and upon information and belief as to all other matters:

1

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

2.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

4.     A private party may also bring an action for damages for unjust enrichment under the common law.  Plaintiff's unjust enrichment claims originate from the same facts that form the basis of their federal claims.  Thus, the Court has supplemental jurisdiction over Plaintiff's unjust enrichment claims pursuant to 28 U.S.C. §1367.

5.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because Defendant maintains its principal place of business within this District and is subject to personal jurisdiction in this District.

**PARTIES**

6.      Plaintiff is an adult resident of Detroit, Michigan, and is a former employee of Defendant.  Defendant employed Plaintiff from approximately June 7, 2023 through November 30, 2023. Plaintiff's consent to join form is attached as **Exhibit A**.

7.      Additional putative Collective members were or are employed by Defendant as hourly employees ("Hourly Employees") during the past three years and their consent forms will also be filed in this case.

8.      Defendant is a Delaware limited liability company whose registered agent is CSC-Lawyers Incorporating Service, with a registered address of 3410 Belle Chase Way, Lansing, MI 48911.

**STATEMENT OF FACTS**

9.      On or about June 7, 2023, Defendant hired Plaintiff as an hourly non-exempt employee. Plaintiff worked at Defendant's location at 13750 Rotunda Drive, Dearborn, MI 48120.

10.      Plaintiff's most recent base hourly rate of pay was $17.00.

11.      Defendant employs similarly situated non-exempt Hourly Employees at multiple locations across the United States including, but not limited to: Roanoke, Indiana; Bowling Green, Kentucky; Louisville, Kentucky; Flint, Michigan; Hamtramck, Michigan; Sterling Heights, Michigan; Warren, Michigan; Wayne,

Michigan; Kansas City, Missouri; Wentzville, Missouri; Westlake, Ohio; and San Antonio, Texas.

12.    Defendant is a "diverse manufacturer of automotive products and an innovation leader in providing solutions for OEM-level vehicle accessorization in a production environment.  Vehicle integration at [Defendant] covers various aspects of the supply chain, from raw materials to extensive vehicle manufacturing of passenger vehicles, trucks, and other commercial applications across 38 locations in North America…"[1]

13.    Plaintiff was employed to work on the manufacturing of truck beds which required the use of specific tools, including drills and glue.

14.    Defendant required Plaintiff to wear company-issued protective clothing during her work shifts for her safety.

15.    The company-issued protective safety gear includes safety vests, safety glasses, and gloves which were maintained in the time clock area (hereinafter, this personal protection equipment will be collectively referred to as "the PPE").

16.    Defendant required Plaintiff to change into ("don") and change out of ("doff") the PPE before and after her work shifts in the designated location at Defendant's manufacturing facility.

17.    The process of donning and doffing the PPE was compensable because

---

[1]*See* https://www.gfxltd.com/ (last visited Mar. 4, 2024).

Defendant required Plaintiff to wear the PPE during her work shifts and to don and doff the PPE at the worksite.

18.   Additionally, the PPE was an integral part of the Plaintiff's principal work activities, as the Plaintiff could not safely perform her work activities without wearing the PPE.

19.   Plaintiff spent substantial amounts of time each day donning and doffing the PPE and prepping her tools and cleaning her station before and after her work shifts.

20.   Defendant, however, did not pay the Plaintiff for this time.  Instead, Defendant only paid Plaintiff based on the time her scheduled shift started and the time her scheduled shift ended regardless of when she was "clocked-in" to Defendant's timekeeping system.  Because Plaintiff was required to don her PPE and prep her tools before the start of her scheduled shift time and clean her workstation and doff her PPE after the end of her scheduled shift time, Plaintiff was not paid for her time beginning with her first principal activity of the workday and continuing through her last principal activity of the workday.

21.   Consequently, Defendant failed to pay Plaintiff for all compensable time, including overtime.

22.   Defendant knew or could have easily determined how long it took Plaintiff to complete her donning, doffing, prepping and cleaning activities, and

Defendant could have properly compensated Plaintiff for this pre- and post-shift work, but deliberately chose not to.

23.     Hourly Employees who elect to participate in this FLSA collective action seek compensation for all off-the-clock work performed for Defendant, and compensation at the appropriate overtime rate for all hours worked in excess of 40 per week, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

24.     Plaintiff seeks a declaration that their rights were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs them whole for damages they suffered, and to ensure that she and future workers will not be subjected by Defendant to such unlawful conduct in the future.

**Time Rounding**

25.     Generally, employers may record employees' starting or stopping times to the nearest five minutes or to the nearest one-tenth or quarter of an hour. 29 C.F.R. § 785.48(b).   The regulations provide these rounding practices may be used presuming the arrangement averages out so the employees are fully compensated for all the time they actually work. *Id*.

26.     However, an employer's policy of rounding off is permissible only if the rounding occurs so employees are not disadvantaged over time. 29 C.F.R. §

785.48. Rounding off practices that result in significant discrepancies in recordkeeping or in a failure to compensate employees for time actually worked are improper. *Id.*

27. At all relevant times, through the use of a computer software system, Defendant recorded its hourly employees' time clock punches on a daily basis.

28. Throughout her employment with Defendant, Plaintiff punched in on Defendant's time-clock system when she began work and punched out when she finished work.

29. Defendant maintains an unlawful rounding policy that rounds employee punch-in and punch-out times in a way that is inured to Defendant's benefit. As a result, Defendant failed to pay Plaintiff for all time worked. Defendant's violations are apparent on the face of Plaintiff's earnings statements, which clearly show all time is rounded to the nearest hour.

30. In each workweek where Plaintiff worked forty (40) hours or more, the rounding policy results in an unlawful deprivation of overtime wages, as provided by the FLSA.

31. In each workweek where Plaintiff worked less than forty (40) hours, the rounding policy results in an unlawful deprivation of straight-time wages (i.e., gap time).

32. Upon information and belief, the FLSA violations evidenced in

Plaintiff's earnings statements were committed by Defendant against every one of its Hourly Employees in every workweek.

33.     Defendant's time-rounding practices almost invariably inured to its benefit.

34.     Defendant's time-rounding practices were intended to systematically underpay all of its Hourly Employees, and Defendant was unjustly enriched as a result.

35.     Defendant's policy and practice of rounding the punch-in and punch-out times of Plaintiff and the other Hourly Employees resulted in a substantial amount of uncompensated work over the past three years.

36.     Defendant knew or should have known that all of the work performed by Plaintiff and the other Hourly Employees was compensable under the FLSA. Likewise, Defendant knew or should have known that its rounding policies and practices violated the FLSA.

37.     As a matter of common business policy, Defendant failed to pay Plaintiff and the other Hourly Employees for all work performed as set forth in this Complaint.  They were not paid their promised hourly wage for all work performed, and they were not paid overtime, as required by the FLSA, in weeks in which they worked more than forty hours.

38.     As a result of these *prima facie* FLSA violations, Defendant is liable to

Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

### Donning and Doffing Allegations

39.   For their own personal safety, Defendant required Plaintiff and all other Hourly Employees to wear company-issued PPE during their work shifts.

40.   The company-issued PPE included a safety vest, safety glasses, and gloves.  Plaintiff and all other Hourly Employees were also required to prepare their tools and supplies for their shift, such as drills and glue.

41.   Defendant required Plaintiff and all other Hourly Employees to don and doff the PPE and prepare their tools and supplies after they were clocked in but before their work shifts began in designated locations at Defendant's manufacturing facility.  Plaintiff was required to sign the tools and supplies out of a cage before proceeding to her designated workstation.

42.   Defendant prohibited Plaintiff and other Hourly Employees from donning or doffing the PPE at home.

43.   Defendant prohibited Plaintiff and other Hourly Employees from taking the PPE home or other removing the PPE from Defendant's manufacturing facilities.

44.   Defendant prohibited Plaintiff and other Hourly Employees from leaving the cage area and walking to the production area without wearing the PPE.

9

45.     Defendant prohibited Plaintiff and other Hourly employees from entering certain areas of the manufacturing without wearing the appropriate PPE.

46.     Defendant prohibited Plaintiff and other Hourly employees from leaving the production area and walking back to the cage area without wearing the PPE.

47.     Defendant prohibited Plaintiff and other Hourly Employees from leaving the manufacturing facility without cleaning their workstation, doffing the PPE, and returning the tools and supplies to the appropriate spaces.

48.     Plaintiff and other Hourly Employees spent substantial amounts of time each day donning and doffing the PPE and prepping their tools and cleaning the workstations before and after work shifts.

49.     Defendant, however, did not pay Plaintiff and other Hourly Employees for this time.

50.     Instead, Defendant only paid Plaintiff and other Hourly Employees based on their scheduled shift start time and their scheduled shift end time regardless of when they are "clocked-in" to Defendant's timekeeping system.  Because Plaintiff and other Hourly Employees were required to don their PPE and prep their tools before the start of their scheduled shift time and clean their workstations and doff their PPE after the end of their scheduled shift time, Plaintiff and other Hourly Workers were not paid for their time beginning with their first principal activity of

the workday and continuing through their last principal activity of the workday.

51.    Consequently, Defendant did not pay Plaintiff and other Hourly Employees for all compensable time, including overtime.

**Pre- and Post-Shift Donning and Doffing Activities**

52.    Before their scheduled shifts and before the beginning of their production activities Plaintiff and other Hourly Employees were required to undertake the following essential work tasks in chronological order in order to be at their workstations and ready to work at the time of the scheduled shift start time:

- Upon arriving at the facility, Plaintiff and other Hourly Workers were required to "clock-in" upon entrance into the facility;

- Once clocked in they proceeded to the "Cage" where the PPE and tools were kept;

- After waiting their turn in line, they signed out their respective PPE and tools, in the case of Plaintiff, drills and glue;

- Plaintiff and other Hourly Employees then donned their safety vests, safety glasses, and gloves; and

- Plaintiff and other Hourly Employees then proceeded to their workstations.

53.    The pre-shift donning process took Plaintiff and other Hourly Employees substantial time on a daily basis, ranging from 5 to 7 minutes per shift, and happening before the beginning of their scheduled shift.

54.    After the end of their scheduled shifts, Plaintiff and other Hourly

Employees were required to undertake the following essential work tasks in chronological order:

- Plaintiff and other Hourly Employees were required to clean their workstation (i.e., throwing away scraps, sweeping, emptying the trash, replacing the trash bags, etc.);

- Once the cleaning was complete, Plaintiff and other Hourly Employees proceeded to the "Cage" where they waited to return their tools;

- After signing their respective tools back in, Plaintiff and other Hourly Employees doffed their required PPE; and

- Just before leaving the building for the day Plaintiff and other Hourly Employees "clocked out" for the day.

55.     The post-shift doffing process took Plaintiff and other Hourly Employees substantial time on a daily basis, ranging from 5 to 10 minutes per shift, and happening after the end of their scheduled shift time.

56.     Defendant, however, did not pay Plaintiff and other Hourly Employees for all of this time.  Instead, Defendant paid Plaintiff based on their scheduled shift start times and end times, not the time that Plaintiff and other Hourly Employees performed their first and last principal activities of the workday.

57.     Consequently, Plaintiff and other Hourly Employees performed pre-shift work in the range of 5 to 7 minutes per shift and post-shift work in the range of 5 to 10 minutes per shift.

**The Off-the-Clock Work Results in Viable "Gap Time" Claim**

58.    "There are two types of gap time claims: pure gap time claims—when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours—and overtime gap time claims—when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 364 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

59.    Plaintiff, and similarly situated Hourly Employees, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

60.    During the weeks that Plaintiff and all other Hourly Employees do not work over 40 hours in a workweek, the outcome of Defendant's policies and practices were a deprivation of straight-time wages, for which the Defendant is directly benefited.

## FLSA COLLECTIVE ACTION ALLEGATIONS

61.    Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of all of Defendant's current and former hourly employees who worked for Defendant at any time in the past three years.

62.    Plaintiff and putative Collective members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, Plaintiff and

putative Collective members all had their time improperly rounded, resulting in underpayment of wages.

63.     Upon information and belief, Defendant utilized a centralized payroll system that calculated overtime pay for all similarly situated employees in the same or similar manner.

64.     Resolution of this action requires inquiry into common facts.

65.     These similarly situated individuals are known to Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

66.     Notice to the similarly situated individuals of this case as a collective action pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

67.     Upon information and belief, there are hundreds of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and

(b)(3) on behalf of herself and on behalf of:

> *All current and former hourly employees who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Class").  Plaintiff reserves the right to amend

this definition if necessary.

69.     The members of the Rule 23 Class are so numerous that joinder of all

Rule 23 Class members in this case would be impractical.  Plaintiff reasonably

estimates there are hundreds of Rule 23 Class members.  Rule 23 Class members

should be easy to identify from Defendant's computer systems and electronic payroll

and personnel records.

70.     There is a well-defined community of interests among Rule 23 Class

members and common questions of law and fact predominate in this action over any

questions affecting individual members of the Rule 23 Class.  These common legal

and factual questions, include, but are not limited to, the following: whether

Defendant's non-payment of wages for all compensable time unjustly enriched

Defendant.

71.     Plaintiff's claims are typical of those of the Rule 23 Class in that they

and all other Rule 23 Class members suffered damages as a direct and proximate

result of Defendant's common and systemic payroll policies and practices.

Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

72.   Plaintiff will fully and adequately protect the interests of the Rule 23 Class and she retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

73.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

74.   This case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

75.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue

his claim as a class action").

76.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

<u>**COUNT I**</u>
<u>**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**</u>
<u>**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**</u>

77.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

78.     Defendant is an employer within the meaning of 29 U.S.C § 203(d).

79.     Plaintiff is an employee within the meaning of 29 U.S.C C 203(e).

80.     At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and all putative collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

81.     Defendant maintained an unlawful time-rounding policy that did not comply with 29 C.F.R. § 785.48(b) because the policy did not "average out so that the employees [we]re fully compensated for all the time they actually work," and instead "result[ed], over a period of time, in a failure to compensate the employees properly for all the time they have actually worked." *Id*.

82.   As a result of Defendant's unlawful time-rounding policy, in workweeks that the Plaintiff and other hourly employees worked more than forty (40) hours, they were deprived of overtime wages in violation of the FLSA.

83.   As a result of Defendant's willful failure to compensate Plaintiff and the putative collective members for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

84.   Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

85.   Plaintiff and all others similarly situated are entitled to back pay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

## COUNT II
## (Rule 23 Class Action)
## UNJUST ENRICHMENT

86.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

87.     At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Class member a pre-established hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

88.     Upon information and belief, each Rule 23 Class member, including Plaintiff, was paid a base hourly rate.

89.     Plaintiff and every other Rule 23 Class member relied upon Defendant's promise for the pre-established hourly rate and performed by doing their jobs and carrying out their required work duties.

90.     By not paying Plaintiff and every other Rule 23 Class member the promised base hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant was unjustly enriched.

91.     Plaintiff and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

92.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Class member and enjoyed the

benefits derived therefrom.

93.     Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Class member to finance its various business expenditures.

94.     Defendant was unjustly enriched by the retention of monies received pursuant to the sales and services Plaintiff and the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Class for the same.

95.     Plaintiff and the Rule 23 Class suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

96.     As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Class member have suffered damages, including, but not limited to, loss of wages.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a.      Designation of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all current and former hourly employees who worked for Defendant at any time in the past three years. This list shall include

the last known addresses, emails, and telephone numbers of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate.

b.    An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count II);

c.    An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Class; and undersigned counsel as Class counsel for the same;

d.    A complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

e.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

f.    A declaratory judgment that Defendant was unjustly enriched by failing to pay Plaintiff and the Rule 23 Class for each non-overtime hour they worked at a pre-established base hourly rate;

g.    A monetary judgment awarding full back pay and an equal amount in liquidated damages;

h.    An award of pre-judgment and post-judgment interest;

i.    An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of a service payment to the named Plaintiff; and

j.    Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Date: March 21, 2024

Respectfully submitted,

*/s/ Jesse L. Young*
Jesse L. Young (P72614)
**SOMMERS SCHWARTZ, P.C.**
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

Kevin J. Stoops (P64371)
Kathryn E. Milz (IL ARDC 6297213)
**SOMMERS SCHWARTZ, P.C.**
1 Towne Sq., 17th Floor
Southfield, Michigan 48375
(248) 355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

Jonathan Melmed (CA SBN 290218)
Laura Supanich (P85849) (CA SBN 314805)
**MELMED LAW GROUP, P.C.**
1801 Century Park East, Suite 850
Los Angeles, CA 90067
(310) 824-3828
jm@melmedlaw.com
lms@melmedlaw.com

*Attorneys for Plaintiff and the Putative Collective and Class*

22